IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JULIAN SANDOVAL-FLORES,<br><br>Defendant. | ORDER AND MEMORANDUM DECISION DENYING MOTION FOR COMPASSIONATE RELEASE<br><br>Case No. 2:99-CR-00109-TC |

Prisoner Julian Sandoval-Flores moves this court for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), asking the court to reduce his 385-month prison sentence to time served. (Def.'s Mot. at 1, ECF No 271.) To date, he has served approximately 258 months of his sentence. He bases his motion on fear that his medical conditions are uncontrolled through the treatment he is receiving and that he is particularly vulnerable to the COVID-19. He tested positive for COVID-19 in May 2020 and argues that he faces an unacceptable risk of serious physical harm or death should he become reinfected with the virus.

Given the record before the court, Mr. Sandoval-Flores has not satisfied his burden to show extraordinary and compelling reasons to release him. Accordingly, his motion is denied.

**FRAMEWORK FOR COMPASSIONATE RELEASE ANALYSIS**

Mr. Sandoval-Flores brings his motion under 18 U.S.C. § 3582, as amended by the First

1

Step Act[1] (often referred to as the compassionate release statute). According to the statute, the court "may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that … extraordinary and compelling reasons warrant such reduction ... and that such a reduction is consistent with applicable policy statements by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The factors under 18 U.S.C. § 3553(a) include the nature of the crime, the defendant's characteristics and history, the danger to the public, and the sentencing range.

Before Congress passed the First Step Act, only the Bureau of Prisons (BOP) could bring a motion under § 3582 requesting that the court reduce a prisoner's sentence. Now the court may consider the issue either upon a motion from the BOP or "upon motion of the defendant after the defendant has fully exhausted all administrative rights" with the BOP. Id. § 3582(c)(1)(A). If the BOP has not filed a motion on the defendant's behalf, the defendant, to be eligible for the court's consideration of his motion for release under Act, must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Id.

As noted above, the statute requires that a sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission[.]" Id. That phrase has given rise to disagreement about the court's discretion to define "extraordinary and compelling reasons."

The statute does not define "extraordinary and compelling reasons." But the United States Sentencing Commission (USSC) defined it before Congress passed the First Step Act,

---

[1] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

when Congress mandated that the USSC, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, <u>shall describe what should be considered extraordinary and compelling reasons</u> for sentence reduction, including the criteria to be applied <u>and a list of specific examples</u>…." 28 U.S.C. § 994(t) (emphasis added).

Following the mandate, the USSC, in the United States Sentencing Guidelines (USSG), issued that policy statement in USSG 1B1.13, which describes the circumstances allowing a court, upon motion by the BOP, to reduce a defendant's term of imprisonment. The Policy Statement requires a finding that "[e]xtraordinary and compelling reasons warrant the reduction" or that "the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]" USSG 1B1.13(1)(A)–(1)(B). The Policy Statement also calls for a conclusion that "[t]he defendant is not a danger to the safety of any other person in the community, as provided in 18 U.S.C. § 3142(g)[.]" USSG 1B1.13(2). And, along similar lines, the Policy Statement requires the court to balance the § 3553(a) factors.

In the Commentary Application Notes, the USSC defines extraordinary and compelling reasons in terms of the defendant's (A) medical condition,[2] (B) advanced age,[3] (C) family

---

[2] The "Medical Condition" category applies when the defendant is (1) "suffering from a terminal illness," (2) "suffering a serious physical or medical condition," (3) suffering a serious functional cognitive impairment," or (4) "experiencing deteriorating physical or mental health because of the aging process," and the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13 Commentary Application Note 1(A)(i)-(ii).

[3] The "Age" category requires that "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." USSG 1B1.13 Commentary Application Note 1(B).

3

circumstances,[4] or (D) other reasons.[5] USSG 1B1.13 Commentary Application Notes 1(A)-(D). The Policy Statement also calls for a conclusion that "[t]he defendant is not a danger to the safety of any other person in the community, as provided in 18 U.S.C. § 3142(g)[.]" USSG 1B1.13(2). And, along similar lines, the Policy Statement requires the court to balance the § 3553(a) factors.

The Policy Statement has not been amended since the First Step Act was passed, so the USSC has not yet weighed in on the change. This court has held, in a non-COVID-19 case, that the Policy Statement does not curtail its discretion to determine what circumstances are extraordinary and compelling under § 3582. In United States v. Maumau, this court

> join[ed] the majority of other district courts that have addressed this issue in concluding that it has the discretion to provide Mr. Maumau with relief, even if his situation does not directly fall within the Sentencing Commission's current policy statement. Under the First Step Act, it is for the court, not the Director of the Bureau of Prisons, to determine whether there is an "extraordinary and compelling reason" to reduce a sentence.

No. 2:08-cr-758-TC, 2020 WL 806121, *4 (D. Utah Feb. 18, 2020), stayed pending appeal, No. 20-4056 (10th Cir. June 1, 2020). In this and other districts, courts have reached the same conclusion when addressing motions raising COVID-19-related reasons for release.

> Since the onset of the COVID-19 pandemic, many courts "have agreed that [extraordinary and compelling] reasons exist in cases involving defendants whose serious underlying health conditions place them at an elevated risk of infection and death from COVID- 19 while in custody." United States v. Lopez, No. 18-CR-2846 MV, 2020 WL 2489746, at *2 (D.N.M. May 14, 2020) (unpublished). Of the courts that have reached such a conclusion, several "have based their finding on the Sentencing Commission's catch-all provision for 'other' extraordinary and compelling reasons" in the Application Notes. Id. Conversely, other courts have reached this determination based on "a plain reading of

---

[4] "Family Circumstances" consist of "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children," or "(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG 1B1.13 Commentary Application Note 1(C).

[5] The "Other Reasons" catch-all provision simply says, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C.)" USSG 1B1.13 Commentary Application Note 1(D).

4

§ 3582(c)(1)(A) after concluding that the [relevant] policy statement no longer applies." Id. Either way, "a majority of federal district courts have found . . . that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." United States v. Perez, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) (unpublished).

United States v. Wadley, No. 2:18-cr-408-DAK, 2020 WL 3270880, at *2 (D. Utah June 17, 2020) (unpublished).

Consequently, regardless of whether the court follows the Policy Statement or simply looks to the statute, the analysis of the "extraordinary and compelling reasons" prong is essentially the same.

## ANALYSIS

Mr. Sandoval-Flores has the burden to establish that he is entitled to a sentence reduction under § 3582. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Jackson, — F. Supp. 3d —, No. 1:19-cr-347 (TNM), 2020 WL 3402391, *2 (D.D.C. June 19, 2020), appeal filed, No. 20-3046; United States v. Holroyd, — F. Supp. 3d —, No. 1:17-cr-234-2 (TNM), 2020 WL 2735664, *2 (D.D.C. May 26, 2020), appeal filed, No. 20-3041. For the reasons set forth below, the court finds that he has not met that burden.

1. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Mr. Sandoval-Flores is currently incarcerated at the North Lake Correctional Facility (North Lake), a contracted correctional institution in Michigan operated by the GEO Group, a private corporation. (Def.'s Mot. at 3); see also Fed. Bureau of Prisons, CI North Lake, https://www.bop.gov/locations/ci/nlk/ (last accessed Nov. 6, 2020). Mr. Sandoval-Flores asserts that because he is not incarcerated in a Bureau of Prison (BOP) facility, he has no warden who can seek compassionate relief on his behalf. Accordingly, he maintains that he is excused from the administrative exhaustion requirement under § 3582(c)(1)(A). He cites several cases in which

the United States concedes that § 3582(c)(1)(A)'s administrative exhaustion requirement is excused for inmates housed in non-BOP facilities. See U.S. v. Burrus, 19-cr-284, 2020 WL 3799753, at *3 (W.D. Pa. July 7, 2020) (government did not contest that defendant exhausted his administrative remedies since he was incarcerated in a private correctional facility and "is not technically in BOP custody"); see also U.S. v. Jacobs, 19-cr-149 (RP-HCA), ECF No. 84 (S.D. Iowa July 2, 2020) (granting release to defendant detained in county jail; government conceded exhaustion); U.S. v. Morrison, 19-cr-284 (PWG), ECF No. 44 (D. Md. June 24, 2020) (granting release to defendant detained in regional jail; government conceded exhaustion). Save for U.S. v. Burrus, most of the cases Mr. Sandoval-Flores cites concern inmates housed in county and local jails. Courts have yet to expressly decide whether § 3582(c)(1)(A)'s administrative exhaustion requirement is excused for an inmate detained at a private facility contracted with BOP, like North Lake.

The United States argues that the same administrative remedies exist at North Lake as they do at any other BOP facility. (Pl.'s Opp'n at 3, ECF No. 275.) North Lake is contractually obligated to follow applicable provisions of the First Step Act, including compassionate release procedures. (Pl.'s Opp'n Ex. 3 at 49; Ex. 4 at 3.) According to the United States, Mr. Sandoval-Flores should have first submitted his compassionate release request to Mr. Tracy Johns, North Lake's Facility Administrator; because Mr. Sandoval-Flores has not done so, he has failed to exhaust administrative remedies.

The court declines to decide whether Mr. Sandoval-Flores is excused from the administrative exhaustion requirement of § 3582(c)(1)(A) based on the nature of the facility where he is housed. Even if Mr. Sandoval-Flores is excused from administrative exhaustion, he

6

has failed to satisfy the extraordinary and compelling reasons prong of the compassionate release analysis, and for that reason his motion must be denied.

2. **EXTRAORDINARY AND COMPELLING REASONS**

In Mr. Sandoval-Flores' motion, he asserts that he "is particularly vulnerable to COVID-19" and if he were to be reinfected with the virus "he faces a very high likelihood of death or permanent bodily injury." (Def.'s Mot. at 1.) He points out that North Lake has been the site of a large COVID-19 outbreak and "has not had success preventing the spread of the disease among those in its care." (Id. at 9.)

To begin, the court finds that the existence of the pandemic is not by itself an extraordinary and compelling reason for release, and that the existence of infections in the facility where the defendant is incarcerated, without more, is also not a sufficient reason. But if the defendant is at risk for severe complications that could lead to serious injury or death if he contracts the virus, that may be an extraordinary and compelling reason under § 3582(c)(1)(A)(i). The United States reaches the same conclusion: "If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition satisfies the standard of 'extraordinary and compelling reasons.'" (Pl.'s Opp'n at 12 (footnote citation omitted).)

According to the CDC, older adults and people with certain underlying medical conditions who contract COVID-19 are at increased risk for severe illness, or even death. CDC, CORONAVIRUS DISEASE 2019 (COVID-19), People Who Are At Increased Risk For Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last updated Sept. 11, 2020). The older the person, the greater the risk. CDC, CORONAVIRUS DISEASE 2019 (COVID-19), Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/older-adults.html (last updated Sept. 11, 2020). In fact, "8 out of 10 COVID-19 deaths reported in the U.S. have been in adults 65 years and older." Id. In addition, a person of any age has an increased risk of severe illness if he has one or more of following CDC-identified chronic conditions: cancer; chronic kidney disease; chronic obstructive pulmonary disease; heart conditions such as heart failure, coronary artery disease, or cardiomyopathies; immunocompromised state from a solid organ transplant; obesity (body mass index of 30 kg/m2 or higher but < 40 kg/m2); severe obesity (body mass index ≥ 40 kg/m2); pregnancy; sickle cell disease; smoking; and type 2 diabetes mellitus. CDC, CORONAVIRUS DISEASE 2019 (COVID-19), People With Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-with-medical-conditions.html (last updated Nov. 2, 2020). Finally, the CDC has determined that the following chronic conditions might put a person at higher risk: moderate-to-severe asthma; cerebrovascular disease; cystic fibrosis; hypertension or high blood pressure; immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; overweight (body mass index > 25 kg/m2, but < 30 kg/m2); pulmonary fibrosis; thalassemia; and type 1 diabetes mellitus. Id.

      Here, Mr. Sandoval-Flores says that his medical conditions place him in serious danger "in general" and from COVID-19. (Def.'s Mot. at 9.) Mr. Sandoval-Flores is 55 years old and suffers from diabetes, hypertension, and obesity. (Def.'s Mot. Ex. 1, Sealed Medical Records, at 1, 49, 55–56.) He has been prescribed at least five medications over the last five years to regulate his diabetes and hypertension. (Id. at 94.) A Chronic Care Treatment Plan from March 17, 2020, lists the degree of control over Mr. Sandoval-Flores' diabetes as "poor" and his hypertension as "fair." (Id. at 108.) The report states that "the inmate has been instructed on medication

compliance, to start exercising, and avoid buying canned and packaged meals from the commissary" and directs Mr. Sandoval-Flores to "decrease fatty meals, high carbohydrates, sweets and increase exercise." (Id. at 109.) Another report from June 25, 2020, reports that Mr. Sandoval-Flores' hypertension is at "suboptimal control on near max doses of 4 meds." (Id. at 49.)

Mr. Sandoval-Flores contends that his poorly controlled hypertension and diabetes, independent of COVID-19, constitute an extraordinary and compelling circumstance that warrants his release. (Def.'s Mot. at 10–11.) The court disagrees. Mr. Sandoval-Flores has been able to manage his medical conditions in prison for more than 21 years. He has not shown that his medical conditions substantially diminish his ability provide self-care "within the environment of a correctional facility" nor that he is "not expected to recover" from his conditions. USSG 1B1.13 Commentary Application Notes 1(A)(ii). To the contrary, Mr. Sandoval-Flores' medical reports direct him to engage in activities, including adjusting his diet and increasing exercise, so that he can better exercise self-care over his hypertension and diabetes while incarcerated. Mr. Sandoval-Flores' diabetes and hypertension, standing alone, do not warrant his release.

Mr. Sandoval-Flores further asserts that COVID-19 creates an extraordinary and compelling reason to grant his release. Mr. Sandoval-Flores tested positive for COVID-19 on May 18, 2020. (Def.'s Mot. Ex. 1 at 39.) His medical records show that his symptoms were mild, and after May 23, 2020, he was symptom-free. (Id. at 65, 69, 74.) He was isolated from other inmates for 14 days and then released to a quarantine unit. (Id. at 64–65.) On May 26, 2020, a follow-up exam revealed "mild worsening at the right mid and lower lung." (Id. at 39.) A Chronic Care Treatment Plan from June 24, 2020, lists Mr. Sandoval-Flores' control of his

hypertension and diabetes as "poor" and indicates that those conditions had "worsened." (Id. at 55–56.) But the report does not connect Mr. Sandoval-Flores' worsened conditions to COVID-19, nor does it explain if he is more vulnerable to illness due to his exposure to the virus. At an examination on June 25, 2020, Mr. Sandoval reporting "feeling fine" except for chronic left knee pain. (Id. at 49.) Mr. Sandoval-Flores maintains that based on his medical conditions and because he cannot practice social distancing while incarcerated, he is at an increased risk should he contract COVID-19 for a second time.

The court has found in other cases that if the defendant's underlying medical condition puts him at risk for severe illness or death if he contracts the virus, that is an extraordinary and compelling reason under § 3582(c)(1)(A)(i). See, e.g., U.S. v. Chee, 2:05-cr-773-TC, ECF No. 135 at 7–8 (D. Utah Sept. 3, 2020). But the present case concerns a different issue. Mr. Sandoval-Flores raises the question of whether an inmate with multiple medical conditions, who has already contracted and recovered from COVID-1, has provided an extraordinary and compelling reason for early release.

The court recently addressed this issue in U.S. v. Cramer. 2:18-cr-201-TC, ECF No. 43 at 8 (D. Utah Sept. 15, 2020). Although a person's medical conditions, when combined with COVID-19, can be a valid reason for release based on the risk of serious harm recognized by the CDC, the court found that this is different from the uncertain risk a person faces when they have already contracted and recovered from the virus. Id. Mr. Sandoval-Flores' fear that he may contract COVID-19 again and will suffer greater harm then he did the first time he contracted the virus is not supported by evidence. The CDC states that it is "still learning more" about reinfection and that ongoing studies will help it understand "how likely is reinfection; how often reinfection occurs; how soon after the first infection can reinfection take place, how severe are

cases of reinfection; who might be at higher risk of reinfection; what reinfection means for a person's immunity; and if a person is able to spread Covid-19 to other people when reinfected." CDC, CORONAVIRUS DISEASE 2019 (COVID-19), Reinfection with COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last updated Oct. 27, 2020.) The risks posed by reinfection are still largely unknown. No one can say that Mr. Sandoval-Flores will have serious long-term medical issues that justify his release now.

For the reasons stated above, the court finds that Mr. Sandoval-Flores has not met his burden to establish an extraordinary and compelling reason for sentence reduction.

3. **CONSIDERATION OF FACTORS IN 18 U.S.C. §§ 3142 AND 3553**

Because Mr. Sandoval-Flores has not established an extraordinary and compelling reason under the first prong of the analysis, the court need not determine whether the factors in § 3142 and § 3553 weigh against his release.

**ORDER**

For the foregoing reasons, Julian Sandoval-Flores' Motion for Compassionate Release (ECF No. 271) is DENIED.

DATED this 9th day of November, 2020.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge